## UNITED STATES v. MARTIN.

(District Court, E. D. Wisconsin. December 10, 1925.)

1. Aliens ⚖=71½—Court should not cancel naturalization certificate merely because it might have resolved doubt against petitioner in first instance.

Court should not cancel certificate of naturalization, as illegally procured, merely because it might have resolved doubt arising on conflicting testimony against petitioner in first instance.

2. Aliens ⚖=71½—Naturalization certificate of alien's wife, living in United States for little over year before naturalization, without intent to remain, canceled.

Under Act April 14, 1802, Act June 29, 1906, § 4 (Comp. St. § 4352), Act March 2, 1907, § 2 (Comp. St. § 3959), and Act Sept. 22, 1922, §§ 2, 3, 4 and 5 (Comp. St. Ann. Supp. 1923, §§ 4358b, 3961a, 4358c, 4358d), naturalization certificate of German subject's wife, who resided in Germany for nearly 10 years, returned to United States only slightly over a year before naturalization, and expressly avowed intention to return to Germany immediately after naturalization, and there remain, unless her husband decided to emigrate to United States, will be canceled; act of 1922 having expressly repealed sections 3 and 4 of 1907 Act, and Naturalization Law exacting of every applicant allegation and proof of purpose "to reside permanently in the United States."

In Equity. Suit by the United States against Emily Martin to cancel a certificate of naturalization. Decree for plaintiff.

This is a suit to cancel a certificate of naturalization granted to the defendant by the circuit court for Milwaukee county, Wis., and it is submitted to the court upon facts quite without controversy, viz.:

That on April 11, 1924, the defendant filed a petition for citizenship in the circuit court for Milwaukee county under the provisions of the Act of Congress approved September 22, 1922 (42 Stat. 1021). Therein she averred, among other things, that she resided at 327 Prospect avenue, Milwaukee, Wis.; that she was born in the United States on July 20, 1885, and was married to one Ernest August Martin on June 16, 1914, in Berlin, Germany; that she has three children, all of whom were born in Germany; she further expressed her intention to renounce her allegiance to the German empire, of which she was then a subject or citizen; that she has resided in the United States continuously since March 21, 1923, and that she intends to reside permanently in the United States. Her husband is and at all times was a citizen and subject of the German empire, residing at Berlin.

On July 18, 1924, her petition coming on for hearing, she testified under oath: That she was born in the United States, and took a trip to Germany in the year 1913, where she met Dr. Ernest August Martin; that she married him on June 16, 1914, in Berlin; that she resided in Berlin since her marriage, until her return to the United States on March 21, 1923; that she resided in Milwaukee since March 21, 1923, and has home there; that three children were born in Germany, and came to the United States with her, as did her mother; that her husband was in the United States last winter (1922–1923) and returned to Berlin, Germany; that she kept house in Berlin continuously; that she is going back to Germany with her children and mother, and will keep house there again for her husband; that he has been considering immigrating to the United States, but that it has not been definitely decided; that he finds a difficult situation confronting him, in that he cannot practice his profession here without being admitted locally, and does not know whether he could make the examination; that she will live with her husband in Germany permanently, if it is decided that he will not immigrate to the United States; that she intends to return to Germany in the very near future, and that she hopes to induce her husband to come to the United States to live; that her future residence will be governed by the decision of her husband, and, should he decide to remain in Germany permanently, she will do so.

Upon such hearing the government objected to the admission of the applicant on the grounds: (1) That she had not resided in the United States continuously for one year immediately preceding the date of her petition, it appearing that she was here mere-

ly on a temporary sojourn; (2) that the petitioner did not intend to reside here permanently; and (3) that the court was without jurisdiction to hear her petition, as she was not a resident of Milwaukee. These several objections were overruled by the court, petitioner was ordered admitted to citizenship, and certificate No. 1,965,940, now sought to be canceled, was issued to her by the clerk of the court.

Roy L. Morse, U. S. Atty., of Milwaukee, Wis.

Charles B. Quarles, of Milwaukee, Wis., for defendant.

GEIGER, District Judge. [1] In disposing of this case, it is assumed that, if the certificate of naturalization was issued to the defendant after a hearing upon conflicting testimony, which was before the circuit court for Milwaukee county to be weighed and considered because of its susceptibility to establish either the existence or nonexistence of a fact necessary to be established, this court could not say, merely because that court resolved the conflict or drew inferences one way rather than another, that the certificate, if this court disagreed, was thereby shown to be "illegally procured." Speaking more concretely, if upon the hearing before the state court the proof merely cast doubt upon a fundamental fact which the government claims was required to be established, viz. that the petitioner "intended to reside permanently in the United States," and that court resolved the doubt in petitioner's favor, thereby establishing the fact, this court, in order to reach a conclusion of "illegality," could not do so merely by electing to resolve the doubt the other way. In other words, notwithstanding the breadth of the statute in prescribing as ground for canceling and annulling certificates, that they have been "illegally procured," it must be assumed that, as between courts having jurisdiction, each must respect the other's exercise of power in deciding issues determinable one way or another upon application of ordinary judicial processes in the weighing and consideration of conflicting testimony.

[2] Therefore the case will be considered, to ascertain whether the petitioner's showing, in its evidentiary probativeness, permits of one, and only one, conclusion with respect to the nonexistence, at the time of the hearing in the state court, of a fact or facts indispensably necessary to obtain a valid naturalization. There are certain fundamentals not to be lost sight of in this case. They are present either in statutes passed or by way of implication. They deal with indispensable elements which, with or without statutes, inhere in citizenship and allegiance to sovereignty. From earliest times an express statutory prerequisite was a declaration, three years (now two years) at least prior to admission, of a "bona fide * * * intention to become a citizen of the United States." Act April 14, 1802, c. 28, 2 Stat. 153, 155. That prerequisite, except when expressly dispensed with, has been consistently accompanied—when the proceedings for naturalization are brought to the point of determining whether an alien shall be admitted—by the necessity of showing continuity of residence for a period, usually five years, prior to the date of application for admission. It seems quite obvious that the existence and continuation during a probationary period of residence and of a bona fide intention to become a citizen are relevant to more than mere personal history of the applicant during those years; that when they appear they are intended to support the genuineness of an asserted purpose absolutely to renounce one, and to embrace and bear true faith to another, sovereign allegiance; to aid in proving that attachment to principles, disposition toward good order and happiness, are real and are likely to be permanent. Because of the reciprocal rights and obligations subsisting between governments and those within territorial limits, citizenship, with its allegiance, usually concurs with residence, domicile, or habitation therein; and, where it does not, there is none the less the feeling that as a matter of civil obligation it should so concur, thereby, in theory, at least, to enable enjoyment of rights and the discharge of obligations. These, as suggested, may be respected as elementals implied in the very notions of naturalization —as sovereign requirements exacted in the effort to establish as near as may be equivalence between native-born and adopted citizenship.

The query always is whether the past of an applicant, as evidenced by his declared purposes, his conduct during the probationary period, vouches or augurs well for future citizenship, and, by implication, includes a promised future presence, as well as promised future good conduct. It does not imply a license to retain permanent citizenship with permanent absence in the future. I am mindful of statutes from time to time exempting aliens from disclosure of bona fide intention by declarations or of residence at or during prescribed periods, respectively, as prereq-

uisites to admission. The rendition of military, marine, or kindred service by an alien, the discharge of civil obligations for a long period in good faith and under the mistaken belief of citizenship, and other familiar examples, are declared to furnish exemption from some of these ordinary prerequisite conditions for naturalization. But, by exempting such aliens, it is not declared that they need not have such bona fide intention, or that they need not possess or entertain, either in fact or in less degree, the purposes of permanent allegiance at the time. What these statutes do effect is this: That the declared facts, which exempt an alien from complying with the ordinary requirements, are to be accepted as equivalents of—they are equated with—the latter. The rendition of military service, for example, without the declaration exacted in other cases, without a prescribed period of antecedent residence, is taken as proof of their equivalent, but not that the purpose and intention, e. g., of becoming a bona fide citizen or permanently residing in the country, need not be present.

It suffices in the case before us that for many years the statutes governing naturalization have exacted from every applicant the allegation in his petition—and I assume that such allegation must be supported on the hearing—"that it is his intention to reside permanently within the United States." Act June 29, 1906, § 4, 34 Stat. p. 596 (Comp. St. § 4352). Whatever its effect may be, the respondent here gave the statute literal and substantive cognizance by incorporating the allegation in her petition. We note here the statute dealing with expatriation:

"When any naturalized citizen shall have resided for two years in the foreign state from which he came, or for five years in any other foreign state it shall be presumed that he has ceased to be an American citizen, and the place of his general abode shall be deemed his place of residence during said years: Provided, however, that such presumption may be overcome on the presentation of satisfactory evidence to a diplomatic or consular officer of the United States, under such rules and regulations as the Department of State may prescribe: And provided also, that no American citizen shall be allowed to expatriate himself when this country is at war." Act March 2, 1907, § 2 (Comp. St. § 3959).

The present significance of this statute is its reflection of the thought that whatever may be the expectation regarding the residence of natural-born citizens, those who have been naturalized presumptively lose their citizenship very quickly upon nonresidence. Therefore, in advance of our consideration of the particular statute which is pressed by the respondent to authorize her naturalization, the case presents these fundamental matters of fact:

(1) That the respondent in 1914 lost her citizenship through marriage with an alien —a subject of Germany.

(2) That for nearly 10 years, and while a subject of Germany, she had her residence, domicile, or general abode, whatever it be called, in Germany, and was, as a married woman, a head of the household.

(3) That slightly over one year prior to the naturalization in question she had been in America with her children and her mother, and maintained a "home" during that period in the city of Milwaukee.

(4) That at no time prior to or during the last-mentioned period, nor at the time of her naturalization, did she have an intention to return to the United States and reside therein permanently. Her one year's "home" or "residence" here immediately prior to the attempted naturalization should be held conclusively to have been maintained for no purpose, and with no intent, except that she deemed it essential to qualify her to take advantage of the statute hereinafter referred to.

(5) That, although her petition averred an intention to reside permanently in the United States, upon the hearing thereof she did not under oath assert, or attempt to support, the possession, or the existence, of such intention. On the contrary, so far as she deposed respecting her future, she expressly negatived her then having any such intention; she expressly avowed her then intention to return immediately after her naturalization to Germany, continue there her former residence or general abode, subject only to the mere conjectural possibility that her husband might form, and attempt to execute, an intention to immigrate to the United States; if he failed to do so, she would remain in Germany permanently.

Plainly, an intention to reside permanently in the United States cannot coexist with an intention to reside in Germany with her husband so long as he—with no present intention on his part of ever leaving—resides there. He may be debating the proposition of emigrating, but so long as the debate is undecided, just so long, respondent here now avows, she does not and will not have any intention of returning to, or residing in, the United States. To say that she might or

probably will return if her husband emigrates, falls far short of a present intention to return and so reside. And it may be interesting to inquire of the respondent's position, if at the expiration of two years in Germany, she attempted to rebut or "overcome" the presumption that she "has ceased to be an American citizen" declared to arise under the Act of March 2, 1907, supra. What "satisfactory evidence" could she present to "a diplomatic or consular officer of the United States, under such rules and regulations as the Department of State may prescribe"? If we may surmise that the latter would at least exact a showing of facts disclosing (1) continued good faith allegiance; (2) a good faith intention to return and to reside in the United States as her permanent place of abode—could she avow either of these, or at least the second, without confessing that she did not have such at the time of her naturalization? Can it be that such intention need not be present in the proceedings for and in the oath of citizenship; that a contrary intention may be present; that there need be no intention whatever on the subject; and that it suffices if thereafter the element of intention may be supplied to sustain a citizenship granted on paper against a countervailing intention existing at the former time?

It is my understanding of this expatriation law that the "presumption" is aroused by absence or nonresidence as a fact evidentiarily probative of loss of that allegiance and of that permanence of attachment to sovereignty which grows out of residence or abode; or, putting it in another way, as evidencing the nonexistence, after two or five year absences, presumptively of those intentions and feelings which are prerequisites and conditions of naturalization grants. Manifestly the law aims merely to afford opportunity by satisfactory evidence to rebut the presumption, and thereby to show the continued existence, notwithstanding absence from the country, of the identical citizenship with all of its attendant feelings and intentions, that was originally granted. It is a means, by evidence, to restore what presumptively has been lost, to reconcile absence and nonresidence with purposes originally declared, and it is not a means of creating or sustaining such a thing as permanent citizenship in absentia. It would be a reproach upon the naturalization system if, on granting citizenship, applicants could be told (1) that they need have no intention permanently to reside in this country; and (2) if it be the

fact, as they have declared their purpose immediately to return to the country whose allegiance has just been foresworn, and to remain there indefinitely, with no present intention of ever returning to this country, they need only have this caution: That, unless at the end of two years they form an intention in good faith to return and to reside here, the citizenship granted will cease. As well might they bluntly be told that, for the time being, paper citizenship only is granted. Real citizenship will come when, after two or five years' absence, "satisfactory evidence" is given before a consular officer, etc.

But the law under which this naturalization was obtained, and which is now put forth as its justification, is entirely clear. It was passed September 22, 1922, deals with the "naturalization and citizenship of married women," and declares broadly that "the right of any woman to become a naturalized citizen of the United States shall not be denied or abridged because of her sex or because she is a married woman." Comp. St. Ann. Supp. 1923, § 4358a. This preamble, as it may be called, forecasts· as the legislative object, not the placing of women, married or unmarried, in a class giving them privileges beyond those granted fundamentally to men, not the enlarging of the naturalization systems to include them, regardless of their good faith intentions with respect of allegiance, residence, or the like at the time of their marriage or naturalization, but to prevent abridgment of their citizenship, or their right to retain or to obtain it, solely because of sex or marriage.

True, as it will be seen, the statute, agreeably to its preamble, deals with the marriage status as affecting the right of women to retain citizenship existing at the time of marriage, and, if not so existing, the manner and means of obtaining it—expressly repealing certain former enactments bearing on these identical subjects. Thus its second section declares that any woman who marries a citizen of the United States after the passage of this act, or any woman whose husband is naturalized after the passage of this act, "shall not become a citizen of the United States by reason of such marriage or naturalization; but, if eligible to citizenship, she may be naturalized upon full and complete compliance with all requirements of the naturalization laws" (Comp. St. Ann. Supp. 1923, § 4358b), except that (a) no declaration of intention shall be required, and (b) that the one-year residence in the United States shall be required instead of a five-

year residence in the United States, and a one-year residence within a state ordinarily required. The act proceeds:

"Sec. 3. That a woman citizen of the United States shall not cease to be a citizen of the United States by reason her marriage after the passage of this act, unless she makes a formal renunciation of her citizenship before a court having jurisdiction over naturalization of aliens: Provided, that any woman citizen who marries an alien ineligible to citizenship shall cease to be a citizen of the United States. If at the termination of the marital status she is a citizen of the United States she shall retain her citizenship regardless of her residence. If during the continuance of the marital status she resides continuously for two years in a foreign state of which her husband is a citizen or subject, or for five years continuously outside of the United States, she shall thereafter be subject to the same presumption as is a naturalized citizen of the United States under the second paragraph of section 2 of the act entitled 'An act in reference to the expatriation of citizens and their protection abroad,' approved March 2, 1907 [supra]. Nothing herein shall be construed to repeal or amend the provisions of Revised Statutes, § 1999, or of section 2 of the Expatriation Act of 1907, with reference to expatriation." Comp. St. Ann. Supp. 1923, § 3961a.

It is important at this point to note two provisions found in the expatriation law of 1907, supra, viz.:

"Sec. 3. That any American woman who marries a foreigner shall take the nationality of her husband. At the termination of the marital relation she may resume her American citizenship, if abroad, by registering as an American citizen within one year with a consul of the United States, or by returning to reside in the United States, or, if residing in the United States at the termination of the marital relation, by continuing to reside therein." Comp. St. § 3960.

"Sec. 4. That any foreign woman who acquires American citizenship by marriage to an American shall be assumed to retain the same after the termination of the marital relation if she continue to reside in the United States, unless she makes formal renunciation thereof before a court having jurisdiction to naturalize aliens, or if she resides abroad she may retain her citizenship by registering as such before a United States consul within one year after the termination of such marital relation." Comp. St. § 3961.

Therefore, since September 22, 1922, marriage to a citizen of the United States no longer confers citizenship upon the wife, and, where husband and wife are both aliens, the naturalization of the husband no longer naturalizes the wife, and the marriage of a woman citizen of the United States to an alien does not terminate her citizenship. Manifestly, this new legislation, being repugnant to sections 3 and 4 of the Expatriation Act of March 2, 1907, supra, repeal of the latter is expressly provided. The repealer, however, validates all naturalizations effected under the prior act, and likewise declares that lost citizenship should not be restored by the repeal or by the enactment of the new law.

We come now to the fourth section of the Act of September 22, 1922, viz.:

"Sec. 4. That a woman who, before the passage of this act, has lost her United States citizenship by reason of her marriage to an alien eligible for citizenship, may be naturalized as provided by section 2 of this act: Provided, that no certificate of arrival shall be required to be filed with her petition if during the continuance of the marital status she shall have resided within the United States. After her naturalization she shall have the same citizenship status as if her marriage had taken place after the passage of this act." Comp. St. Ann. Supp. 1923, § 4358c.

It is evident that, under section 2 (supra) of that act, neither of the woman subjects therein specified could become citizens without averring and proving as a requirement of the naturalization laws, the "intention to reside permanently in the United States." Therefore, when section 4, last above, confers upon a woman who, before the passage of this act, has lost her citizenship by reason of her marriage to an alien, the right to be naturalized as "provided by section 2 of this act," it is not to be assumed or presumed that such naturalization is to be consummated except upon exact compliance with such latter section. True, section 4 contains a proviso exempting her from the necessity of filing a certificate of arrival if, during the continuance of the marital status she shall have resided in the United States. But neither that, nor the further provision that after her naturalization she shall have the same citizenship status "as if her marriage had taken place after the passage of this act," otherwise affects section 2 as the determiner of conditions required to be present to enable naturalization.

Hence this statute, in the light of those sections of the expatriation law of 1907 which

are repealed, not only presents an entirely consistent scheme for dealing with the citizenship and naturalization of married women, but, as I believe, a clear purpose to adhere to the fundamental requirements of the naturalization law in those respects upon which the naturalization of the respondent is now challenged. A further discussion of the facts is not needful. The case has been considered, and the conclusion is reached, regardless of the true interpretation of the words "eligible" or "ineligible," as they may appear in sections 2, 3, 4, and 5 of the act in question. Comp. St. Ann. Supp. 1923, §§ 4358b, 3961a, 4358c, 4358d. It is assumed, for the purpose of this case, that the government correctly interprets "eligibility" to citizenship as referable to the scope of the naturalization system, and not as referring to compliance with precedent conditions.

I have been favored with a copy of the memorandum filed by the judge of the circuit court for Milwaukee county upon the hearing of the respondent's petition. As to the distinctions between the terms "residence," "domicile," or "abode," they appear to me to be outside of the case. If intention to reside permanently in the United States must be asserted and found as a "requirement" under the naturalization law, the respondent here, as hereinbefore noted, though averring it in her petition, did not and could not support it upon the hearing. She not only failed to establish it, but clearly showed the existence then of a countervailing intention to return to Germany, and to remain there without definite intention of returning. That situation, coupled with her testimony respecting her stay, in America during the year preceding the attempted naturalization, not only justifies, but precludes any other than, the view that her coming to America was prompted by no consideration, except that of being here for a year to enable her to claim a year's residence, thereby bringing her within her conception of the law in question. In other words, she did not reside here, in a true sense. It was a temporary sojourn, utterly inconsistent with the possession of an intention that the renunciation of allegiance to the German sovereignty should be coupled with any purpose of future residence in the country of her new declared allegiance. With great respect to the circuit court which admitted her, I am prompted to say that the "spirit of the naturalization laws," assigned by that court as a ground for admitting her, seems to me peremptorily to forbid her admission.

The government has made a plain case for cancellation of the certificate, and the decree prayed for may be entered.